THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EMILY TORJUSEN,

                              Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK; and
DOES ONE THROUGH FIFTY,

                              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:18-cv-05785-BHS

**DEFENDANT NATIONAL RAILROAD
PASSENGER CORPORATION'S
MOTION FOR A NEW TRIAL OR IN
THE ALTERNATIVE REMITTITUR**

**NOTE ON MOTION CALENDAR:
MAY 27, 2022**

## INTRODUCTION AND SUMMARY OF RELIEF REQUESTED

Defendant National Railroad Passenger Corporation ("Amtrak") respectfully moves for a new trial, pursuant to Fed. R. Civ. P. 50(b) and 59.  Such relief is necessary to address the prejudice that resulted from Plaintiff's counsel repeatedly telling the jury in closing argument that Amtrak was being deceitful and distorting the truth.  This misconduct and Plaintiff's improper anchoring tactics resulted in an excessive verdict against the weight of the evidence.  In the alternative, Amtrak seeks remittitur.

## AUTHORITY AND ARGUMENT

### I.  AMTRAK SHOULD BE GRANTED A NEW TRIAL

After a jury trial, a court may grant a new trial for any reason for which a new trial has previously been granted in an action in federal court.  Fed. R. Civ. P. 59(a)(1)(A).  "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight

DEFENDANT NRPC'S POST TRIAL MOTION  - 1
NO. 3:18-CV-05785-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014). Although each error discussed herein warrants granting a new trial, the impact of trial errors must be considered cumulatively. *See Jerden v. Amstutz*, 430 F.3d 1231, 1240 (9th Cir. 2005); *Gordon Mailloux Enters., Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 366 F.2d 740, 742 (9th Cir. 1966) ("We conclude it too must be reversed; although the errors requiring reversal, if considered separately, were perhaps harmless, their cumulative effect was prejudicial.").

## A. A New Trial is Warranted Because Plaintiff's Counsel Made Improper Statements Repeatedly During Closing

In response to Amtrak's motion *in limine* to preclude inflammatory statements and arguments attempting to disparage Amtrak, the Court said it would rule on any objection when made.  Declaration of Andrew G. Yates ("Yates Decl."), May 2, 2022, at ¶ 2 and Ex. A (3/7/22 TT at 14:20-24).  The Court, however, warned "the need to avoid these things applies to both parties." *Id*. at 14:23-24.

Despite this warning from the Court, Plaintiff's counsel repeatedly told the jury that Amtrak was trying to deceive them and twisted and distorted what happened.  Plaintiff's counsel made the following remarks in his summation where he knew they would have the most impact on the jury.

- Why do we spend time talking about what she knows – what we know she still can do? And the answer is simple.  The answer is because their defense in this case is to distract you from the harm, ***to distort the evidence, and to deceive you*** about what your role is and what her damages are.  Yates Decl., at ¶ 3 and Ex. B (4/1/2022 TT 66:3-8).[1]

Amtrak immediately objected to this, which the Court overruled.  *Id.* at 66:9-10.

---

[1] In this brief, when quoted material is in bold and italics, the emphasis has been added.

DEFENDANT NRPC'S POST TRIAL MOTION  - 2
NO. 3:18-CV-05785-BHS

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Emboldened by the Court's decision to give him free rein, Plaintiff's counsel proceeded to tell the jury that Amtrak was deceitful and made this the central theme of his closing:

- "Is there something wrong with a lawyer communicating with witnesses he or she knows are going to come to trial?  I think there is something wrong if the lawyer doesn't do that.  But *somehow by deceiving and twisting and distorting what really happened*, they are suggesting that Emily shouldn't be compensated because she hired lawyers." *Id.* at 69:9-14.

- "Instead, in their constant attempt to *distract and distort and deceive*, they talked about how much money he makes." *Id.* at 70:12-14.

- "Second of all, they didn't bring any evidence in to show that there is anybody who is qualified, who criticizes the DTI test – technology, standards, platform, operation.  Again, *they want you to be deceived*." *Id.* at 71:12-15.

- "What she said was that she was 'hopeful that Emily would be able to recover.'  She did not categorically state that she would recover.  Dropping a word, ignoring a word changes meaning.  *Again, distort, deceive*." *Id.* at 78:17-20.[2]

- "By parsing out one sentence and ignoring the rest, *you can deceive*.  We aren't here to *deceive* you." *Id.* at 82:16-17.

- "They prefer that the brain injury remain hidden…." *Id.* at 84:7.

- "Don't let *the deception, the deceit, the distortion* substitute what she has been able to accomplish for what she has lost." *Id.* at 100:14-16.

After Plaintiff's counsel completed his closing argument, Amtrak's counsel moved for a mistrial.  *Id.* at 102:16-24.   In denying that motion, the Court stated, "You did make one objection.  If you had made more, the Court would have intervened there and not drawn attention to it." *Id.* at 102:25-103:2. The Court denied the mistrial motion, despite recognizing the

---

[2] *See also id.* at 99:6-8 ("But unlike the Bible, where you take an *eye for an eye*, *Amtrak doesn't have psyche or a soul that could be equally damaged to Emily.")* (emphasis added) *See id.* at 99:9 (Amtrak's objection to same).

DEFENDANT NRPC'S POST TRIAL MOTION  - 3
NO. 3:18-CV-05785-BHS

019188.0423/8946973.3

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

problems caused by Plaintiff's counsel's comments:

> [U]se of the word "deception" is not the best way to approach this. … But in rebuttal I think this "deception" -- of course what's the difference between "deception" and "distortion"?  I just think you can avoid using the terms.

*Id.* at 103:2-12.

After taking a recess, the Court became more concerned about Plaintiff's counsel's comments about Amtrak's conduct at trial:

> Before we bring the jury in, Mr. Petru, I am concerned about the word "deceiving."  That is impugning the character of opposing counsel here.  I think it would be appropriate -- it is your choice.  It would be appropriate for you in your rebuttal to say: By using the word to "deceive," I did not mean to impugn the character of counsel.

*Id.* at 103:16-22.

On rebuttal, Plaintiff's counsel stated, "[B]efore I talk about the substance of counsel's argument, I want to make sure that each and every one of you understand when I used the word 'deceive' earlier, I don't intend and don't impugn the character of counsel."  *Id.* at 130:22-131:1.  This belated attempt by Plaintiff's counsel (as opposed to the Court) to cure the misconduct was not sufficient.  The bell cannot be unrung.

1.  <u>Plaintiff's Counsel's Statements Impugning the Character of Amtrak and its Defense Counsel were Improper</u>

The Supreme Court has stated that counsel "must not be permitted to make unfounded and inflammatory attacks on the opposing advocate." *United States v. Young*, 470 U.S. 1, 9 (1985) (noting that the district judge should have dealt with the improper argument of counsel "promptly").  Similarly, the Ninth Circuit has held that inflammatory comments impugning opposing counsel are improper.  *See, e.g., Leinweber v. Tilton,* 490 Fed. Appx. 54, 56-57 (9th Cir. 2012) (holding that the prosecutor's comments regarding defense counsel's dishonorable character was improper, but did not violate the defendant's due process ***because the trial judge sustained the defense objections and gave a curative instruction***) (emphasis added); *Hein v.*

DEFENDANT NRPC'S POST TRIAL MOTION  - 4
NO. 3:18-CV-05785-BHS

019188.0423/8946973.3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

*Sullivan*, 601 F.3d 897, 913 (9th Cir. 2010) (finding that the prosecutor's improper comment that the defense was "dishonest" did not violate the defendant's due process ***because the trial judge sustained an objection and gave an instruction*** that there was no evidence that any of the lawyers in the case committed any wrongdoing) (emphasis added); *United States v. Sanchez,* 176 F.3d 1214, 1224–25 (9th Cir. 1999) (finding misconduct because prosecutor's comments were a denigration of the defense where prosecutor stated "the defense in this case read the records and then told a story to match the records. And, ladies and gentlemen, I'm going to ask you not to credit that scam that has been perpetrated on you here.").

"Comments by counsel must be directed to the strength of the evidence and not amount to an ad hominem attack on opposing counsel for being part of a purported scheme to mislead." *R.J. Reynolds Tobacco Co. v. Gafney,* 188 So.3d 53 (Fla. 4th Dist. Ct. of Appeals 2016). The appellate court in that case described the problem as follows:

> The comments at issue regarding defense counsel did not involve evidence, or deductions and conclusions therefrom. Whether these comments are viewed as an unsubstantiated accusation, an unflattering characterization, or as a mere inadvertent or unintended flourish, they were neither reasonable nor permissible inferences to be drawn from the evidence adduced at trial. ***Comments accusing an opposing party's attorney of wanting the jury to evaluate the evidence unfairly, of trying to deceive the jury, of deliberately distorting the evidence, or of participating in a concerted scheme to do so, have no place in our legal system.***

*Id.* at 59 (emphasis added).

The Supreme Court of Washington has likewise been very clear that comments impugning the integrity of defense counsel are improper. In *State v. Lindsay,* 180 Wn.2d 423, 443 (2014), the Supreme Court held that a comment by the prosecutor in his closing that the defendant's argument was a "crock" "directly impugn[ed] defense counsel." The comment was deemed to be improper because it "implies ***deception*** and dishonesty." *Id*. (emphasis added). Here, Plaintiff's counsel did not mince his words and "imply" that Amtrak and its counsel were deceptive and dishonest. He flat out called them "deceptive" and "deceiving."

DEFENDANT NRPC'S POST TRIAL MOTION - 5
NO. 3:18-CV-05785-BHS

019188.0423/8946973.3

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

2.   The Improper Comments Require a New Trial

In the Ninth Circuit, to obtain a new trial based on attorney misconduct, the "flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Kehr v. Smith Barney, Harris Upham, Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (*quoting Standard Oil Co. v. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965)); *see also SEC v. Jasper*, 678 F.3d 1116, 1129 (9th Cir. 2012) (same).

In *Kehr*, the Ninth Circuit upheld the denial of a new trial even though the attorney's comments were improper. *Kehr*, 736 F.2d at 1286. It did so for three reasons: (1) "the offending remarks occurred primarily during opening statement and closing argument, rather than throughout the course of the trial[;] [t]hey were isolated, rather than persistent"; (2) "opposing counsel never objected during the closing argument or moved for a mistrial"; and (3) unlike some cases where attorney misconduct required a new trial, the jury's award of damages in this case was not excessive." *Id.* Looking at these three factors, Amtrak is entitled to a new trial.

First, although the offending remarks were only in counsel's closing argument, they permeated the closing; they were persistent, not isolated.[3] Moreover, this was a relatively short four-day trial where liability was stipulated. The Ninth Circuit has also held that improper comments during a closing argument can satisfy the first *Kehr* factor. "For conduct to 'permeate' a proceeding it need not occur throughout the proceeding. Were that the case, the most blatant, unjustified, and prejudicial misconduct in closing argument would never warrant reversal because it would have occurred only at the end of a trial." *Bird v. Glacier Electric Corp.*, 255 F.3d 1136, 1145 n.16 (9th Cir. 2001); *see also Globefill Inc. v. Elements Spirits, Inc.*, 640 Fed. Appx. 682, 684 (9th Cir. 2016) (ordering a new trial even though defense counsel's misconduct

---

[3] One instance of attorney misconduct may be sufficient for a mistrial. *See County of Maricopa v. Mayberry*, 555 F.2d 207, 217 (9th Cir. 1977). There, a lawyer asked an expert an improper question and the trial court admonished the jury to disregard it. On appeal, the Ninth Circuit determined that even one improper question was a sufficient basis to require reversal of a jury verdict where the misconduct was "an intentional act, done with the sole purpose of bringing to the jury something that should not have been heard." *Id.* at 219.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

was limited to closing argument because the misconduct sufficiently permeated the entire proceeding).

In addition, the Ninth Circuit has stated that improper comments during only a closing argument can be sufficient to warrant a new trial because they occur at the end of the case where they leave the jury with a "final impression." *Hern v. Intermedics*, 210 F.3d 383 at *4 (9th Cir. 2000) (unpublished). "The statements were one of the last things the jury heard before deliberating." *Id.* The same is true here.

The second *Kehr* factor is whether the party harmed by the improper conduct of counsel objected to the conduct or moved for a mistrial. As discussed above and in Point I (A) (3) below, Amtrak objected to Plaintiff's counsel's comments and moved for a mistrial.

The third *Kehr* factor is whether the misconduct resulted in prejudice to the other side in the form of an excessive verdict. As discussed below in Points I (B) and II, the verdict in this case was excessive. It also has a punitive flavor to it, which is not surprising given that the Plaintiff's counsel urged the jury to arm itself to deal with Amtrak's deceiving, distorting and distractive conduct at trial. Plaintiff's counsel intended his comment to inflame the jury, and the excessive nature of the jury's verdict leads to the conclusion that the jury was unduly influenced by his misconduct.

3. <u>Amtrak Was Not Required to Object Each Time Counsel Made Improper Comments Because the Court Overruled its Original Objection</u>

When the Court overruled Amtrak's objection the first time the improper statements were made, Amtrak was not required to object further. The Court was already on notice of the objection and the basis for the objection. Because Amtrak's objection was overruled, Plaintiff's counsel was able to persist in stating that Amtrak was deceiving and distorting the truth.

The Ninth Circuit has recognized that a defense counsel entering "objections to the language and tenor of the prosecutor's closing remarks by way of a mistrial motion after the government finished its summation" is "an acceptable mechanism by which to preserve challenges to prosecutorial conduct in a closing argument in lieu of repeated interruptions to the

DEFENDANT NRPC'S POST TRIAL MOTION  - 7
NO. 3:18-CV-05785-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

closing arguments ….” *United States* v. *Prantil*, 764 F.2d 548, 555 n.4 (9th Cir. 1985).  In 2014, the Supreme Court of Washington expressly adopted the *Prantil* rule.  *See State v. Lindsay*, 180 Wn.2d 423, 441-42 (2014) (even though defense counsel did not object to many of the improper attacks upon him in the prosecutor's closing, his motion for a mistrial immediately after the prosecutor's closing argument was sufficient to preserve review of the issue).

If Amtrak did object more than once, it would have given the jury reason to believe that Amtrak was in fact trying to be obstructionist or distort the facts.  *See Young*, 470 U.S. at 13 (noting that "interruptions of arguments, either by opposing counsel or the presiding judge, are matters to be approached cautiously").  The Ninth Circuit also has acknowledged what every trial lawyer knows.  "[T]rial lawyers are reluctant to make frequent objections because the jury may think they have something to hide …." *United States v. Mesterhazy*, 15 F.3d 1093, 1992 WL 524313, at *1 (9th Cir. 1993).  "[C]onstant objections are certainly not required, as they could antagonize the jury."  *Kehr*, 736 F.2d at 1286.

Had Amtrak objected a second or third time, it would have run the risk of the jury thinking that Amtrak was acting nefariously and substantiated Plaintiff's counsel's improper claims.  It also would have carried significant risk of antagonizing the jury.  Amtrak also does not know how the Court would have handled a second or third objection without "draw[ing] attention to it." Ex. B (4/1/2022 TT at 103:2).

4.  Plaintiff's Counsel's Statement on Rebuttal Did Not Remedy the Injury Amtrak and its Counsel Sustained

At the very least, the Court should have issued a curative instruction that told the jury that Plaintiff's counsel's comments were improper and should be disregarded by the jury.  *See, e.g., Maxwell v. Gatz of San Diego*, 714 Fed App'x 641 (9th Cir. 2017) (defense counsel's improper remarks during his closing argument did not warrant a new trial ***because the potential prejudice from those remarks was addressed and ameliorated by the trial judge's curative instructions*** and plaintiff's counsel's opportunity to rebut defense counsel's statements); *Sanchez*, 659 F.3d at 1258 ("Even in the absence of objections by defense counsel, a trial judge should be alert to

DEFENDANT NRPC'S POST TRIAL MOTION  - 8
NO. 3:18-CV-05785-BHS

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

019188.0423/8946973.3

deviations from proper argument and take prompt corrective action as appropriate."); *United States v. Randall,* 162 F.3d 557-60 (9th Cir. 1998) ("We conclude that the district court's cautionary instructions cured any prejudice resulting from the prosecutor statements.").

Instead of issuing a curative instruction, the Court merely suggested that Plaintiff's counsel should explain to the jury that he did not mean to impugn the character of Amtrak's counsel. Ex. B (4/1/2022 TT at 102:25-103:22). By saying nothing to the jury, however, the Court in effect endorsed these improper comments. The jury heard nothing from the Court saying that these comments were improper or that they should be disregarded. The only thing they heard from the Court was that Amtrak's objection to the first "deceiving" comment was overruled. As such, the jury likely concluded that these comments by Plaintiff's counsel were appropriate and accurate because the Court allowed them to be said over and over.

This case is very similar to *R.J. Reynolds* where the trial judge also recognized that the comments by plaintiff's counsel about defense counsel were improper and, like this case, suggested to plaintiff's counsel that he "may want to clarify" his remarks to the jury. The appellate court found this was not sufficient to cure the prejudice from plaintiff's counsel's improper remarks.

> Considering that this comment, in the words of the trial judge, "jumped right out at [him]," it is highly probable that it influenced the jury as well. A subsequent curative instruction by the court aimed at rectifying this error would in all likelihood have been insufficient to remedy the damage. Further, [plaintiff's] counsel's attempt to mitigate the consequences of his statements by explaining his intentions was also wholly ineffective.

*R.J. Reynolds*, 188 So.3d at 60. As a result, the appellate court ordered a new trial:

> Appellee's counsel tried to explain he was not suggesting that the defense attorneys were participants in any conspiracy. **We are not persuaded that this attempt at clarification served to unring the bell; rather, it appears to us that these comments were reasonably likely to prejudice the jury and fatally impair the fairness of the proceedings.**

*Id.* (emphasis added).

DEFENDANT NRPC'S POST TRIAL MOTION  - 9
NO. 3:18-CV-05785-BHS

019188.0423/8946973.3

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Similarly, this Court's remedy to the problem caused by Plaintiff's counsel's improper remarks was too little, too late. It also was not sufficient to remedy the injury that Amtrak, as opposed to its counsel, sustained. The issue is not so much that these statements did or did not mean to impugn the character of counsel, but whether the jury's verdict was the product of passion and prejudice as a result of counsel's repeated statements that Amtrak deceived and distorted and twisted the truth. The Court never suggested that counsel should correct his statements that Amtrak was deceitful, only that he was not personally attacking the character of its lawyers. This is not enough. The jury's verdict was a product of passion and prejudice, and a new trial is necessary to remedy the injury that Amtrak sustained.

**B.  A New Trial is Warranted Because Plaintiff's Counsel Anchored the Jury to $23+ Million**

Prior to trial, the Court denied Amtrak's motion *in limine* to preclude Plaintiff's counsel from making an anchoring argument to the jury. Ex. A (3/7/22 PTC 24:5-12).

During closing argument, Plaintiffs' counsel told the jury that Plaintiff was seeking at least $23 million or more for non-economic damages. *See* Ex. B (4/1/2022 TT 92:10-96:19). Plaintiff's counsel initially asked for $21 million consisting of: $2 million for the brain injury that Plaintiff sustained in the last four and a half years (*id.* at 92:10-13); $5 million for the next 50 years "of going through life with a brain injury" (*id.* at 93:24-93:2); $4 million for post-traumatic stress disorder in the four and a half years preceding the derailment (*id.* at 93:8-9); and $10 million for emotional damages for the next 58 years (*id.* at 93:9-10). However, Plaintiff's counsel then asked for another $2 million "for what they did to her on that day, what she experienced on that day, we believe another $2 million would be fair compensation for the last four and a half years." *Id.* at 96:15-19.

This $23 million anchoring resulted in a grossly excessive award in the amount of $8 million. Dkt. 64. Furthermore, the jury's verdict was not supported by the evidence.

DEFENDANT NRPC'S POST TRIAL MOTION  - 10
NO. 3:18-CV-05785-BHS

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1.  <u>The Jury's Verdict of $8 Million for Non-Economic Damages Was Excessive and Against the Weight of the Evidence.</u>

At trial, there was no testimony from any witness that Plaintiff was emotionally incapable of doing anything at any point in time.  Indeed, Plaintiff testified that she returned to her studies at the University of Washington shortly after the derailment and made the dean's list at every quarter after the accident while taking rigorous courses such as Arabic.  Her GPA after the accident was very high, ranging from 3.53 the first quarter she returned to school to 3.9.  She also interned at the Washington Capitol.  She graduated with a triple major in political science, international studies, and Near Eastern language/civilizations.  Ex. B (4/1/2022 TT 7:21-18:12).

After the accident, Plaintiff traveled to numerous countries including France, Italy, England, Germany, Bosnia, Croatia, Slovenia, Romania, and Egypt, where she took the plane, bus, train.  She also went hiking.  She moved to Cairo after graduation.  Ex. B (4/1/2022 TT 18:14-34:23).

Plaintiff's LinkedIn resume, which was admitted into evidence, was impressive for her young age.  She is currently the Chief Executive Officer of Geek Lab Holdings in Cairo, Egypt where she resides.  She has four to six people reporting to her.  Ex. B (4/1/2022 TT 35:21-37:4).

Plaintiff also has written articles for various publications/websites.  These include serious subjects such as her love of Cairo, Yemen's fragile peace talks, and Egypt's role in Libya's civil war.  She also wrote articles on lighter subjects, such as the worst movie sequels, refreshing foods to keep you hydrated, how to start a career in modeling, and on-line shopping.  Ex. B (4/1/2022 TT 30:9-31:25, 37:22-38:14, 40:12-42:13, 47:15-48:10).

Plaintiff testified that she had hoped to "get a master's degree, to learn Arabic, to become fluent in it, do something related to the Middle East, work in politics, and then, you know, have a family."  Yates Decl., at ¶ 4 and Ex. C (3/31/2022 TT 185:24-186:4).  Nothing would have prevented Plaintiff from accomplishing any of these things.  Since the derailment, Plaintiff made the dean's list every quarter, traveled extensively, and currently lives in Cairo.  There was absolutely no testimony or evidence at trial that prevents Plaintiff from pursuing graduate school,

DEFENDANT NRPC'S POST TRIAL MOTION  - 11
NO. 3:18-CV-05785-BHS

019188.0423/8946973.3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

getting involved in politics, and having a family.  There was no testimony that Plaintiff's grades were not good enough to go into graduate school; there was no testimony that Plaintiff's graduate school application was rejected.  Nor was there any testimony that Plaintiff could not marry or bear children.

There was nothing distinctive about Plaintiff's behavior with her family and partner that was tied to the derailment.  Plaintiff admitted that she had arguments, issues, disagreements with her father prior to the derailment. Ex. B (4/1/2022 TT 52:11-14).  Her mother testified that prior to the derailment, Plaintiff had been unhappy for a period of time and took her to see a counselor for two sessions, and after the derailment, Plaintiff was "very, very short fused, easily upset.  My relationship with her is very fragile." Ex. C (3/31/2022 TT 119:9-10).  Even Dr. John Crossen agreed that Plaintiff had emotional issues, including outbursts in class as far back as high school.  Yates Decl., at ¶ 5 and Ex. D (3/30/2022 TT 132:3-133:2).  Plaintiff testified that she "snaps" at her partner. Ex C (3/31 TT 159:11-14).  But Plaintiff also testified that she works with her partner at Geek Labs. *Id.* at 164:1-6.  So, she not only lives with her partner, she also works with him.  Again, there is nothing that causally connects Plaintiff's post-derailment behavior to the derailment.

Plaintiff admitted that before the derailment, she "was really quite shy.  I barely ever spoke to people." Ex. C (3/31/2022 TT 157:22-158:4).  So,  her social behavior post-derailment is not something that existed only after the derailment.  After the derailment, she claimed she attended social events and would make "one-minute appearances," then "run away." *Id.* at 138:3-12.  This is consistent with her behavior pre-derailment.  Except for her mother, with whom Plaintiff has not lived with for several years, there was no one to corroborate Plaintiff's claim that she has an "uncontrollable" reaction "at least once a month" or that she "snaps" at people on a weekly basis *Id.* at 158:5-159:5).  As Chief Executive Officer of a company, she is under stress and manages people whose work must meet certain standards to meet the company's needs.  Indeed, she testified that she is often dissatisfied with the work of her subordinates and has fired many people. *Id.* at 157:4-17.  Plaintiff did not establish any relationship between her work stress

DEFENDANT NRPC'S POST TRIAL MOTION  - 12
NO. 3:18-CV-05785-BHS

019188.0423/8946973.3

1   and her post-derailment experience.

2       Plaintiff's post-derailment experience with riding public transportation, including trains,

3   also does not support the jury's non-economic damages of $8 million.  Plaintiff stated that she is

4   "very easily startled" when the bus hits a pothole, and she listens to music whenever she takes

5   public transportation and is "prone to crying."  Ex. C (3/31/2022 TT 132:24-133:17).  But as

6   described above and in her testimony, none of this has prevented Plaintiff from traveling to

7   numerous countries including France, Italy, England, Germany, Bosnia, Croatia, Slovenia,

8   Romania, and Egypt, where she regularly took the plane and other forms of public transportation,

9   including the bus and the train.  Ex. B (4/1/2022 TT 18:13-34:17).

10       Plaintiff's neuropsychological expert, Dr. Elizabeth Scovel admitted that she was not

11  familiar with Plaintiff's experiences and based her opinion only on her last conversation with

12  Plaintiff when she was living in Cairo and had stated that she was reluctant to engage in certain

13  things. Ex. C (3/31/2022 TT 56:13-19).  In fact, Dr. Scovel testified that in 2020, she had only a

14  brief conversation with Plaintiff who stated that she wanted to relocate to another part of Cairo

15  so she wouldn't have to take public transportation to go to work.  *Id.* at 54:20-55:1.  This brief

16  conversation, without more, was insufficient for a jury to determine that Plaintiff was unable or

17  incapable of taking public transportation or that taking public transportation was affecting her

18  life.   Plaintiff testified that when she returned to Cairo to live in June 2021, she commuted to

19  work via the metro.  Ex. B (4/1/2022 TT 32:16-21, 34:13-17).  And Dr. Scovel's testimony that

20  Plaintiff was "inhibited to engage in certain pursuits" (Ex. C [3/31/2022 TT 43:7-25]) was not

21  corroborated by the witnesses' testimony, including Plaintiff's own testimony.  Again, in the four

22  plus years post-derailment, Plaintiff traveled to numerous countries, took public transportation,

23  became the Chief Executive Officer of a company, and resides in Cairo, Egypt where she

24  continues to learn and practice Arabic, a language that she has been learning since her freshman

25  year at the University of Washington.

26       Plaintiff's treating provider Dr. Crossen reported that after Plaintiff's first visit and testing

27  in August 2018, he was "optimistic" her symptoms would continue to resolve.  After a three-year

DEFENDANT NRPC'S POST TRIAL MOTION  - 13
NO. 3:18-CV-05785-BHS

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

019188.0423/8946973.3

1    absence, he saw her again in 2021 when he again reported that he was "optimistic" for Plaintiff's

2    further recovery.  Ex. D (3/30/2022 TT 119:8-16, 124:7-9, 129:7-10).

3         Dr. Scovel saw Plaintiff in 2018 and 2020 and did neurological testing both times.  In

4    2018, she reported being hopeful that Plaintiff may "fully recover."  After seeing her in 2020,

5    Dr. Scovel described Plaintiff's improvement from 2018 to 2020 as "significant."  Dr. Scovel

6    also said Plaintiff's prognosis was "better" than it was in 2018.  Ex. C (3/31/2022 TT 50:13-51:1,

7    60:10-25, 67:20-69:8).

8         As to Plaintiff's emotional aspects, Dr. Scovel testified at trial that she has "not spoken

9    to [Plaintiff] about the reasons" why Plaintiff was reluctant to engage in therapy and could only

10   "surmise that she is reluctant because it is very uncomfortable for her."  Ex. C (3/31/2022 TT

11   78:16-25).  Amtrak objected to this question and response, which this Court overruled.  *Id.* at

12   79:1-2.  Because Dr. Scovel had never spoken to Plaintiff about why she was not engaging in

13   therapy, it was error for this Court to permit Dr. Scovel to speculate as to the reasons.

14        Dr. Spohr, who treated Plaintiff for her physical injuries, acknowledged that: (1)

15   Plaintiff's neurological exams were always normal; (2) she had a minimally displaced fracture

16   of the clavicle; (3) that fracture healed with minimal treatment (just wearing a sling); and (4) the

17   last time she saw Plaintiff was seven or eight months ago when her physical exam was normal,

18   and Plaintiff reported that her headaches had gotten better.  Ex. D (3/30/2022 TT 163:10-23,

19   164:15-165:7, 184:12-186:2).

20        2.   The Jury Was Misled Into Thinking that it Awarded Fair and Reasonable Damages.

21        The Third Circuit has held that plaintiffs' lawyers may not "request a specific dollar

22   amount for pain and suffering in [their] closing remarks."  *Waldorf v. Shuta*, 896 F.2d 723, 744

23   (3d Cir. 1990).  "In the final analysis, a jury trial should be an appeal to the rational instincts of a

24   jury rather than a masked attempt to import into the trial elements of sheer speculation on a matter

25   which by universal understanding is not susceptible to evaluation on any such basis."  *Id*. (internal

26   quotations omitted).

27        The First Circuit also has outlawed mention of either a lump sum or formula for

DEFENDANT NRPC'S POST TRIAL MOTION  - 14
NO. 3:18-CV-05785-BHS

019188.0423/8946973.3

computing pain-and-suffering damages during opening and closing statements.  *Rodríguez v. Señor Frog's De la Isla, Inc.*, 642 F.3d 28, 37-38 (1st Cir. 2011); *see also Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 78-79 (1st Cir. 2010).

In the Second Circuit, "specifying target amounts for the jury to award is disfavored." *Consorti v. Armstrong World Industries, Inc.*, 72 F. 3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996).  "Such suggestions anchor the juror's expectations of a fair award at a place set by counsel, rather than by the evidence. . . . A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent." *Id.; see also Lightfoot v. Union Carbide Corp.*, 110 F. 3d 898, 912 (2d Cir. 1997) (district judges have discretion either to "prohibit counsel from mentioning specific figures" or to allow it with certain safeguards, "including cautionary jury instructions").

Although the Ninth Circuit Civil Model Jury Instruction § 1.7 instructs the jury that "[a]rguments and statements by lawyers are not evidence," anchoring by counsel is still unfair, prejudicial, and gives the jurors undue weight as to what dollar amount for non-economic damages may be reasonable.  Counsel should not have instilled in the minds of the jurors a number or range – this is an inappropriate interference with the jury's decision-making process.

Social science research has revealed that anchoring greatly influences and interferes with the jury decision-making process.  *See* Mark A. Behrens, Cry Silverman, Christopher E. Appel, "*Summation Anchoring: Is It Time To Cast Away Inflated Requests For Noneconomic Damages?*" 44 Am. J. Trial Advoc. 321 (Spring 2021). ("*Summation Anchoring*") (collecting examples from various jurisdictions of anchoring resulting in inflated awards and studies demonstrating the influence of anchoring on mock jurors).  "[O]nce an anchor number has been provided, that number exerts undue influence on the final figure" and "can sway decisions even when the anchor provided is completely arbitrary." *Id*. at 322 (quoting Sonia Chopra, *The Psychology of Asking a Jury for a Damage Award*, PLAINTIFF, Mar. 2013, at 1).[4]  Case law

---

[4] Anchoring has been shown to influence jurors' decisions on damages, even though those jurors may not recognize it.  *Summation Anchoring* at 322 ("Jurors who are bombarded with information during a trial suffer from cognitive overload and unconsciously welcome the

DEFENDANT NRPC'S POST TRIAL MOTION  - 15
NO. 3:18-CV-05785-BHS

019188.0423/8946973.3

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

supports this concern. "A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel, particularly if he conveys the impression (as frequently happens) that he speaks on the basis of extensive trial experience." *Mileski v. Long Island R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974).

The negative, long-term impact of anchoring on the judicial system also should be considered by this Court. The authors of "*Summation Anchoring*" concluded:

> Anchoring practices may successfully help a plaintiff's lawyer obtain an inflated award for noneconomic damages, but these excessive awards are often reduced or overturned post-trial or on appeal. This cycle is costly and inefficient. ***Further, as defendants balk at settlement demands that reflect the chance for sky-is-the-limit awards, plaintiff recoveries are delayed.***

*Id.* at 337 (emphasis added).

Not only does anchoring influence or interfere with the jury decision-making process, but reference to specific numbers or range is misleading. Although a jury instruction that what counsel says is not evidence is commonplace, jurors may not retain this in memory. They also may not realize that any suggested figures or ranges for non-economic damages are not based on any evidence presented at trial. To the extent to which some or all members of the jury fail to remember or otherwise appreciate the distinction between evidence and statements made during summation, it is critical to ensure that the jury is not misled or otherwise given the impression that the proposed figures or dollar ranges for noneconomic damages are based on evidence presented at trial. *See* FRE 403.

Anchoring is not at all different from invoking the golden rule, which the Ninth Circuit has said is "improper because a jury which has put itself in the shoes of one of the parties is no longer an impartial jury." *Minato v. Scenic Airlines, Inc.*, 908 F.2d 977 at *5 (9th Cir. 1990) (unpublished) (*quoting* Annotation, 68 ALR Fed. 333). Similarly, the Supreme Court of

---

presence of an anchor that will reduce the cognitive effort needed.") (internal quotation marks omitted).

DEFENDANT NRPC'S POST TRIAL MOTION  - 16
NO. 3:18-CV-05785-BHS

019188.0423/8946973.3

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Washington has described the Golden Rule as "improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Adkins v. Aluminum Co. of America*, 110 Wn. 2d 128, 139-140 (1988) (*quoting Rojas v. Richardson*, 703 F.2d 186, 191 (5th Cir. 1983)), *clarified on denial of reconsideration*, 756 P.2d 142 (1988).

The Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit provides that jurors "must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you." Ninth Cir. Pattern Jury Inst. Nos. 1.2, 1.3.  By specifying a figure or range for noneconomic damages, counsel is influencing the jury without any evidence to support the claim.  Plaintiff's Counsel should have been precluded from doing that.  As a consequence of Plaintiff's anchoring, the jury returned a verdict that was excessive and not congruent with Plaintiff's damages.  A new trial is therefore warranted.

## II.   IN THE ALTERNATIVE, AMTRAK IS ENTITLED TO A SUBSTANTIAL REMITTITUR

### A.  Standard for Remittitur

A court has discretion to grant a new trial where a verdict appears to be against the weight of the evidence.  *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996).  "That discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Id.*  If this Court does not grant a new trial, a substantial remittitur should be granted.

After viewing the damages in the light most favorable to the prevailing party, if the court finds that that the damages award is excessive, it may either deny the motion for a new trial if the prevailing party accepts a remittitur or grant the motion for a new trial.  *Arnold v. Pfizer, Inc.*, No. 3:10-CV-01025-AC, 2015 WL 268967, at *5 (D. Or. Jan. 21, 2015) (*citing Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir. 2001)).  A trial court granting

DEFENDANT NRPC'S POST TRIAL MOTION  - 17
NO. 3:18-CV-05785-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

019188.0423/8946973.3

a motion for remittitur does not substitute its judgment for the jury's; it reduces the judgment to the maximum amount sustainable by the proof.  *Id.*

Because Plaintiff's claim against Amtrak is governed by Washington law, the Court should apply Washington law in determining whether the verdict is excessive.  *See Gasperini*, 518 U.S. at 426-430 (where state law governs the claim for relief, federal courts must review of the size of the verdict and a party is precluded from recovery in federal court "significantly larger than the recovery that would have been tolerated in state court.") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  *See also Coachman v. Seattle Auto Mgt. Inc.*, 787 Fed. Appx. 416, 417 (9th Cir. 2019) (applying Washington standard in deciding whether an award of damages was excessive).

Under Washington law, the jury's award for noneconomic damages "must be in proportion to the injury suffered" and supported by competent evidence.  *Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 140 (1993).  The Washington remittitur statute provides that the trial court may order a remittitur, as an alternative to a new trial, if the award of damages is so excessive "as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice."  RCW 4.76.030.  The Supreme Court of Washington has stated that an award of damages made by the jury should not be disturbed "unless it is outside the range of substantial evidence in the record, or shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice."  *Pendergrast v. Matichuk*, 186 Wn. 2d 556, 569 (2016) (internal quotations omitted).

**B.  The Verdict Amounts Warrant a Substantial Remittitur**

The jury awarded Plaintiff total non-economic total damages of $8,000,000, comprised of $2,500,000 in past non-economic damages and $5,500,000 in future non-economic damages. Dkt. 64.  As discussed above in Point I (B)(1), these amounts are grossly excessive and against the weight of the evidence.  The Court should grant Amtrak a substantial remittitur to prevent injustice.

The $2,500,000 for past non-economic damages is excessive based upon the extremely

DEFENDANT NRPC'S POST TRIAL MOTION  - 18
NO. 3:18-CV-05785-BHS

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

019188.0423/8946973.3

active life the Plaintiff has enjoyed in the last four and a half years.  After she recovered from the initial trauma of the accident, she returned to University of Washington and graduated with flying colors.  She has traveled extensively in Europe and Egypt during the past four years, which has added a rich diversity to her life experience.  She has taken various forms of public transportation throughout that time, including trains.  Her past non-economic damages should be reduced to $2,000,000 at most.

The award of $5,500,000 for future non-economic damages also shocks the conscience, given  Plaintiff's excellent recovery.  She has a successful career and an exciting new life in Cairo.  There was no testimony that Plaintiff could not attend graduate school or start her own family.  As discussed above, her treating provider, Dr. Crossen, acknowledged that Plaintiff had emotional or behavior issues before the derailment, and, in any event, testified that he was optimistic that Plaintiff would recover with therapy.  Dr. Scovel was hopeful in 2018 that Plaintiff would fully recover and in 2020 her prognosis for Plaintiff was even better than it was in 2018.  Thus, there is no basis for the jury's excessive non-economic award for the future, as it should be substantially less than the past award.  The future non-economic award should be reduced to $1,000,000, at most.

The excessive nature of the jury's award of $2,500,000 for past non-economic damages and $5,500,000 for future non-economic damages is demonstrated by the verdict in *Steele v. Amtrak*, No. C19-5553, arising out of the same accident as this case and also involving a young plaintiff.  There, the *Steele* plaintiff was awarded $960,000 for past non-economic damages and $2,000,000 for future non-economic damages.  *See Steele*, Dkt. 126 (4/19/22 Order at 20).

As this Court observed in denying Amtrak's motion for a new trial in *Steele*, the alleged injuries in *Steele* were worse than those in Torjusen. Yet the non-economic damages were significantly lower in Steele.  *See Steele*, Dkt. 126 (4/19/22 Order at 7) ("Amtrak recently obtained an arguably worse result in [Torjusen] tried in person (but otherwise tried in much the same way, with a  similar jury pool, voir dire, facts, evidence, cross examination, arguments and jury instructions) . . . , which involved a mild traumatic brain injury and an $8 million verdict,

DEFENDANT NRPC'S POST TRIAL MOTION  - 19
NO. 3:18-CV-05785-BHS

with no economic damages sought or awarded.").

In *Steele*, the plaintiff was a 24 year-old female who alleged the following injuries: traumatic brain injury / concussion, neck injury, post concussive syndrome, post concussive visual syndrome, vision issues, post-traumatic stress, anxiety, depression, adjustment disorder and cognitive injuries. The Steele plaintiff's concussion expert (Dr. Chestnutt) testified that she was "not improving overall," that her brain injuries are permanent and that she is unable to hold a regular job because of her functional capacity limitations. *Steele*, Dkt. 126 (4/19/22 Order at 16-17). The Steele plaintiff's life care plan included amounts for her future in-home care and accommodations because she was not independent in the activities of daily life. *Id.* at 18.

As set forth above, Plaintiff has had a completely different recovery from this accident, including obtaining her college degree with excellent marks and a triple major, extensive independent travel around the world and a successful career in Cairo where she is the Chief Executive Officer of a company and where she resides with her partner. Unlike the Steele plaintiff, Plaintiff in this case had no need for damages for future medical expenses and future wage losses. *See id*. at 15-19.

The two cases are not even close in terms of the alleged damages and recovery from same. Yet, the Torjusen jury awarded more than double the Steele damages for past non-economic damages and almost triple the Steele damages for future non-economic damages. This shocking discrepancy demonstrates that Plaintiff's counsel's prejudicial comments in his closing and his $23 million anchor argued to the jury resulted in an excessive verdict that warrants a substantial remittitur, as this excessive verdict was the result of passion and prejudice, stoked by Plaintiff's counsel's improper argument.

## **CONCLUSION**

For the reasons above, Amtrak respectfully requests the following relief:

1.     A new trial on all issues; or, in the alternative, or in the alternative,

2.     Entry of an amended judgment or remittitur reducing the jury's excessive and unsupported compensatory damages awards as set forth above.

DEFENDANT NRPC'S POST TRIAL MOTION  - 20
NO. 3:18-CV-05785-BHS

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

019188.0423/8946973.3

1    DATED:  May 2, 2022

2                                            LANE POWELL PC

3

4                                            By   s/ Andrew G. Yates
                                                  Andrew G. Yates, WSBA No. 34239
5                                                 yatesa@lanepowell.com
                                                  Tim D. Wackerbarth, WSBA No. 13673
6                                                 wackerbartht@lanepowell.com

7

8                                            LANDMAN CORSI BALLAINE & FORD, PC

9

10                                           By   s/ John A. Bonventre
                                                  Mark S. Landman, Pro Hac Vice
11                                                mlandman@lcbf.com
                                                  John A. Bonventre, Pro Hac Vice
12                                                jbonventre@lcbf.com

13                                           Attorneys for Defendant National Railroad
                                             Passenger Corporation
14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT NRPC'S POST TRIAL MOTION  - 21                        **LANE POWELL PC**
NO. 3:18-CV-05785-BHS                                      1420 FIFTH AVENUE, SUITE 4200
                                                                  P.O. BOX 91302
                                                             SEATTLE, WA  98111-9402
019188.0423/8946973.3                                    206.223.7000  FAX: 206.223.7107