1  she would walk again, not knowing if she would live.
2       That trauma, that trauma for a 20-year-old girl in
3  and of itself needs to be fully, completely and adequately
4  accounted for in your verdict.  We think that that trauma
5  in and of itself has a balance, has a value of $2 million
6  for her.
7       However, that experience repeats itself constantly.
8  How do you account -- as a jury, how do you account for
9  the fact that that trauma keeps repeating?  Do you count
10 the number of days?  Do you count the number of weeks?  Do
11 you calculate the number of times that she finds herself
12 on a bus crying?  Does she find -- do you calculate how
13 much time she spent on an airplane knowing that that plane
14 can crash, listening to music so she doesn't think about
15 it if she can help herself, knowing that she is unsafe?
16 Each time she is on a bus that hits a pothole, it takes
17 her back.  Each time she goes through a tunnel, it takes
18 her back.  Each time she sees a news report about an
19 Amtrak crash or a plane crash or another transportation
20 crash, it takes her back, each time she is retraumatized
21 and has been for the last four and a half years.
22      In addition to that, what is the value of friendship?
23 Friends are cherished.  Friends give us enormous value.
24 Taking a friend away is a loss of that value.  You
25 calculate the value for each one of her friends, her

1  childhood friends who she has cut off, or they have cut
2  her off because of her behavior.  And if so, how much do
3  you value each lost friendship.
4      Sadly, she has alienated and has been alienated from
5  her father and her sister.  That's a loss.  How do you
6  compensate somebody for a loss like that?  I'm not sure
7  how you do.  But I know one thing, that your oath as
8  jurors requires you to determine an appropriate
9  compensation for each one of those losses.  Not to do it,
10 sadly, is not to do justice.  So you have to figure out a
11 way to calculate that.
12     Do you look at her lost dream of serving the country
13 in the State Department?  Sure you do.  How do you
14 evaluate it?  But you must.  What is the cost of knowing
15 that your plan of eventually starting a family is a lost
16 dream?  Not a plan, but a lost dream.  The fear of not
17 being able to make close friends now, not get too close to
18 people because you know that people can't work out or
19 won't work out or there will be a problem.  Her fear and
20 concern about keeping a loving relationship.  She is in a
21 relationship now, but you saw her, there is a lot of
22 trepidation and fear about that, going through life
23 knowing that you may and probably will, based on your own
24 understanding of yourself, lose those relationships is a
25 factor that you have to consider and account for in your

1    verdict.
2         Those are only some of the losses that Emily has
3    suffered and continues to suffer.
4         What's the cost of knowing that those around you are
5    constantly walking on eggshells?  What's the emotional
6    expense of avoiding situations just because you do not
7    trust your own instincts and your own reactions, so you
8    control and try to control or govern yourself or take
9    yourself out of situations because you know that you can't
10   control your own reactions?
11        All of these things comprise and make up the mental,
12   the physical, the emotional pain and suffering that Emily
13   has experienced in the past, and with reasonable
14   probability will experience in the future.
15        For the past, the last four and a half years, in
16   addition to the $2 million for what they did to her on
17   that day, what she experienced on that day, we believe
18   another $2 million would be fair compensation for the last
19   four and a half years.
20        The next 58 years, all of these factors continue to
21   invade and impact and affect Emily Torjusen.  The only
22   evidence you have heard -- the only evidence that you have
23   heard concludes that those factors will continue to impact
24   Emily for the next 58 years, to the year 2080.
25        Justice requires that you compensate her and you know

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

EXHIBIT B
Page 57 of 64

```
 1   penny that is lost requires a penny of compensation.
 2         The problem -- the problem here is that it is not
 3   easy to calculate penny for penny.  It is not easy to
 4   calculate damage to the psyche, damage to friendships,
 5   damage to your soul.  It is not easy to do.
 6         But unlike the Bible, where you take an eye for an
 7   eye, Amtrak doesn't have a psyche or a soul that could be
 8   equally damaged to Emily.
 9               MR. BONVENTRE:  Objection.
10               MR. PETRU:  Nobody does.  Amtrak is a person in
11   this.  I am not saying that because they are a
12   corporation.  If it was a person who did this to Emily, we
13   wouldn't go and destroy them emotionally and
14   psychologically.  That's not what American justice does.
15   American justice says:  Look at the harms.  The greater
16   the harm, the greater amount of compensation that is
17   necessary to balance that out.
18         Just because Emily's damage is to her psyche, to her
19   brain, not to her pocketbook, doesn't mean that you will
20   discount one penny of her damage, and that's going to be a
21   hard ask.  But we are going to ask you to do it.
22         You're here to evaluate what this wreck did to
23   Emily Torjusen.  Some of you might think, how would you
24   have reacted, how would this have impacted you.  That is
25   not the standard.  You are not to put yourself into
```

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

EXHIBIT B
Page 58 of 64

1   Emily's place.  The standard is to understand Emily and
2   understand the effect and the impact that this had on that
3   20-year-old girl.
4       Emily has worked exceptionally hard to stay on the
5   horse or to get back on the horse.  She worked her butt
6   off in school.  Her grades show it.  She worked hard at
7   volunteering, hard at keeping busy, hard at finding a
8   landing spot.  But in the wake of all that work, she still
9   has brain damage, she still has the emotional sequelae of
10  PTSD, anxiety and depression.
11      What she has done is struggled, struggled to stay as
12  close to where she could possibly be to maximize her
13  residual abilities as best as she can.  Don't criticize
14  her for that.  Don't let the deception, the deceit, the
15  distortion substitute what she has been able to accomplish
16  for what she has lost.
17      We are not asking you to compensate her for what she
18  has done.  We are asking you to compensate her for what
19  she has lost and for how hard she has had to work to get
20  to what she has done.
21      All of the doctors told you that her grades, her job
22  and her travel do not conflict, do not contradict and do
23  not undermine the diagnoses.  Don't let them fool you by
24  suggesting that because she can travel and has traveled,
25  even though it is so hard for her, that the damages aren't

```
 1    each of the aspects of Emily's harm in detail that I
 2    discussed, or rather just say it is too much, be fair and
 3    reasonable, give us a discount.  Thank you.
 4              THE COURT:  We are going to take a ten-minute
 5    recess here to give everyone a chance to stretch and take
 6    a break.  Be back in ten minutes.  Please do not discuss
 7    the case.
 8         (At this time, the jury exited the courtroom.)
 9              THE COURT:  Mr. Petru, you used most of your hour
10    and 15 minutes.  I certainly will give you rebuttal.  Try
11    to keep it reasonably terse.
12              MR. PETRU:  I will, your Honor.  I appreciate the
13    latitude.
14              MR. BONVENTRE:  Can I be heard briefly, Judge?
15              THE COURT:  All right.
16              MR. BONVENTRE:  I would move for a mistrial, your
17    Honor.  I repeatedly had personal attacks, despite the
18    fact that there were motions filed by both parties:  No
19    personal attacks.  I made initial objections.  Despite
20    that, the Court allowed plaintiff's counsel to continue to
21    make direct attacks: deceitful, deceiving.  I am moving
22    for a mistrial.  It was inflammatory.  It was unfair.  It
23    was extraordinarily unprofessional and it violated the
24    Court's own order.
25              THE COURT:  You did make one objection.  If you
```

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
*1717 Pacific Ave - Tacoma, WA 98402*

**EXHIBIT B**
**Page 60 of 64**

1 had made more, the Court would have intervened there and
2 not drawn attention to it.  I did -- use of the word
3 "deception" is not the best way to approach this.  But I
4 am certainly not going to grant your motion for a mistrial
5 here.  I'm sure that Mr. Petru has taken offense at some
6 of the ways in which maybe you have violated the order by
7 impugning the law firm and the way in which this case
8 proceeded in employing experts and so forth.  That motion
9 is going to be denied.  But in the rebuttal I don't think
10 "deception" -- of course, what's the difference between
11 "deception" and "distortion"?  I just think you can avoid
12 using the term.
13            MR. PETRU:  I will, your Honor.
14            THE COURT:  We will be in recess.
15        (Recessed.)
16            THE COURT:  Before we bring the jury in,
17 Mr. Petru, I am concerned about the word "deceiving."
18 That is impugning the character of opposing counsel here.
19 I think it would be appropriate -- it is your choice.  It
20 would be appropriate for you in your rebuttal to say:  By
21 using the word to "deceive," I did not mean to impugn the
22 character of counsel.
23            MR. PETRU:  And I didn't, your Honor.  I will do
24 that.  I will do that.
25            THE COURT:  All right.

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

**EXHIBIT B**
**Page 61 of 64**

```
 1   life for someone her age, of any age.  I ask that you
 2   think about that.
 3          I ask that you simply give an award, which is your
 4   duty, that is fair and that is reasonable, no more, no
 5   less.  And I have absolutely no doubt, ladies and
 6   gentlemen, that you will do.
 7          I normally don't try to impinge on the function of a
 8   jury, which is to give a number or suggest a number.  And
 9   it is just a suggestion on my part, which, of course, you
10   should feel free to reject.  But based on the
11   reasonableness of the evidence, based on what Emily is
12   doing now, my suggestion is that you give her a total
13   award -- you can break it down however you want, a total
14   award of $750,000.  $750,000.  I believe that is fair.  I
15   believe that is reasonable.  But more importantly, what
16   you decide is what's going to be fair and reasonable.
17          I want to thank all of you very, very much for your
18   time and attention.  Thank you very much.  And have a good
19   afternoon.
20               THE COURT:  Mr. Petru.
21               MR. PETRU:  First of all, I kind of forewarned
22   you what to expect.  And I think that -- before I talk
23   about the substance of counsel's argument, I want to make
24   sure that each and every one of you understand when I used
25   the word "deceive" earlier, I don't intend and don't
```

1  impugn the character of counsel.  Not at all.  He is
2  actually a fine guy.  It is not about him.  It is not
3  about me.  It's about Emily.
4       I asked during my closing whether you would hear
5  anything specifically about evaluating the nuances and the
6  detail of Emily's brain injury, the nuances and detail of
7  her PTSD, her anxiety and her depression, whether counsel
8  would analyze the effect it has had on her, the loss of
9  friendships.  Didn't do it.  Just threw out a number.
10 Said $750,000, that's a lot for 62 and a half years, for
11 the torment of what happened, and what has been going on.
12 That's not related to what happened to her.
13      We can talk a lot about Emily's success and her
14 accomplishments.  We did.  Emily talked about it.  The
15 entirety of the cross-examination was about it, completely
16 avoiding the damage that she has suffered, intentionally
17 avoiding the damage that she has suffered.  Your task is
18 to evaluate that damage, to look at the loss of
19 friendships, look at the irritability, the anger
20 outbursts, look at the traumatization that she suffered on
21 December 18th, 2017, and suffers from in her nightmares
22 and her visions on a weekly basis, the fact that she is in
23 Cairo specifically to avoid the pain of friends, family
24 and her prior life, because it is so painful for her.  The
25 suggestion that she can't be that traumatized because she

```
 1   quite a pleasure to come here every once in a while.
 2            THE COURT:  Well, we are glad to have you all.
 3            MR. BONVENTRE:  Thank you, sir.
 4            MR. PETRU:  Thank you, your Honor.
 5        (Recessed.)
 6
 7
 8                     C E R T I F I C A T E
 9
10
11   I certify that the foregoing is a correct transcript from
12   the record of proceedings in the above-entitled matter.
13
14
15
16   /s/ Barry Fanning
17   BARRY FANNING
     COURT REPORTER
18
19
20
21
22
23
24
25
```

Barry L. Fanning, RMR, CRR - Official Court Reporter
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

EXHIBIT B
Page 64 of 64