# EXHIBIT D

```
                    UNITED STATES DISTRICT COURT

                WESTERN DISTRICT OF WASHINGTON AT TACOMA
 _____

                                     )
 EMILY TORJUSEN,                     ) 3:18-cv-05785-BHS
                                     )
 Plaintiff,                          ) Tacoma,
                                     ) Washington
 v.                                  )
                                     ) March 30, 2022
 NATIONAL RAILROAD PASSENGER         )
 CORPORATION d/b/a AMTRAK,           ) Jury Trial
                                     )
         Defendant.                  ) 9:00 a.m.

 _____

                  VERBATIM REPORT OF PROCEEDINGS
             BEFORE THE HONORABLE BENJAMIN H. SETTLE
                   UNITED STATES DISTRICT JUDGE
 _____
```

Proceedings stenographically reported and transcript produced with computer-aided technology

*Barry L. Fanning, RMR, CRR - Official Court Reporter*

(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov

*1717 Pacific Ave - Tacoma, WA 98402*

**EXHIBIT D**
**Page 2 of 14**

```
 1   A.   No, I don't consider them exaggeration of symptoms.
 2   Q.   Were there -- were there responses --
 3   A.   I--
 4   Q.   Can I ask another question, sir?  Were there
 5   responses above the threshold of what is to be expected?
 6   A.   Yes.
 7   Q.   Thank you.
 8        At the end of your first report, dated August 16th of
 9   2018, am I correct that you indicated, quote, "I am
10   optimistic that her symptoms should continue to resolve
11   with therapy"; is that what you said?
12   A.   Yes.
13   Q.   So as of August 16th, 2018, you were optimistic that
14   with some therapy her symptoms would, quote/unquote,
15   resolve, correct?
16   A.   Correct.
17   Q.   Now, sir, did you, in fact, see Ms. Torjusen
18   thereafter for a couple of therapy sessions?  Correct?
19   A.   Yes.
20   Q.   Do I understand that some of them, sir, were done
21   remotely?
22   A.   All of them.
23   Q.   All of them.  Okay.  So after the initial visit, the
24   therapy sessions were done remotely, correct?
25   A.   Correct.
```

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
*1717 Pacific Ave - Tacoma, WA 98402*

**EXHIBIT D**
**Page 3 of 14**

1   Q.   Okay.  She discharged you because she didn't think
2   she needed to see you anymore?  I believe that's what you
3   said on direct, correct?
4   A.   I think what I said on direct was that she thought
5   she could manage on her own, and she would like to give it
6   a try.
7   Q.   Okay.  So you don't see her again for literally
8   almost three years, correct?
9   A.   Correct.
10  Q.   And she comes back and you say she requests a
11  psychological evaluation in November, correct, on
12  November 8th of 2021?
13  A.   Oh, the opening sentence says that she expressed
14  interest in consultation to assess her current functioning
15  about college following her earlier therapy.  And when I
16  talked with her, she said that she wanted to know whether
17  she -- my recommendations about any further therapy.
18  Q.   So this is after a three-year absence she wants to
19  consult with you again, correct?
20  A.   Correct.
21  Q.   But she did tell you that her trial was coming up,
22  correct?
23  A.   I think she probably did, sure.
24  Q.   And she did ask you to send a letter -- a report to
25  her attorney, correct?

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

EXHIBIT D
Page 4 of 14

1   discomfort and emotional discomfort.
2   Q.   Did you indicate that she has shown great
3   skillfulness in managing to complete a rigorous academic
4   program and do multiple -- multiple highly responsible
5   jobs, correct?
6   A.   Correct.
7   Q.   And then you close the report by indicating again,
8   like you did with the first report, that you have optimism
9   for Emily's potential further recovery, correct?
10  A.   Yes, with therapy.
11           MR. BONVENTRE:  Thank you, Doctor.
12           THE WITNESS:  You are certainly welcome.
13                    REDIRECT EXAMINATION
14  BY MR. PETRU:
15  Q.   Dr. Crossen, you think therapy can help?
16  A.   I do.
17  Q.   Not a cure-all, right?
18  A.   Not in this case, no.
19  Q.   The rule of completeness, if you can turn to the
20  October 26th, 2018 report from your visit with her.
21  Counsel touched on this.  I want to ask you a couple of
22  questions.  This is when she is doing very well in school,
23  apparently.  Are you there?
24  A.   I am just about there.  The 6th of October.
25  Q.   26th.

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

**EXHIBIT D**
**Page 5 of 14**

```
 1                    RECROSS EXAMINATION
 2    BY MR. BONVENTRE:
 3    Q.   That very powerful discussion about how upset
 4    Ms. Torjusen became when some teacher didn't like her
 5    project or something like that, do you remember you just
 6    talked about that like three seconds ago?
 7    A.   Yes.
 8    Q.   On October 26th of 2018?
 9    A.   Correct.
10    Q.   Was that since the Amtrak accident or did that occur
11    when she was in high school?
12    A.   I didn't hear -- I don't understand your question.
13    Q.   Could you look at October 26th of 2018.
14    A.   Yes.
15    Q.   And you talked about someone else was declared a
16    winner, and someone was mad, and the teacher was mad at
17    her.  Do you remember that?
18    A.   Yes.
19    Q.   You took that as a sign that she wasn't doing
20    perfect.  Remember?  You just answered that question for
21    counsel, do you remember?
22    A.   Yes.
23    Q.   When did that happen?  Look at your first sentence in
24    that paragraph.
25    A.   Yes.
```

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

**EXHIBIT D**
**Page 6 of 14**

```
 1   Q.   Did that happen when she was in high school?
 2   A.   Yes.
 3            MR. BONVENTRE:  Thank you.  Nothing further.
 4                    FURTHER REDIRECT EXAMINATION
 5   BY MR. PETRU:
 6   Q.   Did Ms. Torjusen relate similar experiences she had
 7   with teachers and students while she was in college during
 8   the sessions with you?
 9   A.   Yes.
10            MR. PETRU:  Thank you.  Those are all the
11   questions I have.
12                    FURTHER RECROSS-EXAMINATION
13   BY MR. BONVENTRE:
14   Q.   Apparently, she was having these problems before the
15   train accident, correct?
16   A.   You are too far away from the microphone.
17            MR. BONVENTRE:  I withdraw the question, Judge.
18            THE COURT:  Thank you, Doctor.  You are excused.
19            THE WITNESS:  You're welcome.  Thank you.
20            MR. PETRU:  We will go to a live witness at this
21   point.
22            THE COURT:  Call your next witness.
23            MR. PETRU:  I would like to call Dr. Meghan
24   Spohr.
25            THE COURT:  If you would step up to the bench,
```

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

**EXHIBIT D**
**Page 7 of 14**

1           MR. PETRU:  Objection.  Assumes facts not in
2    evidence.
3           MR. BONVENTRE:  I'm asking.
4           THE COURT:  Ask one question at a time.
5    BY MR. BONVENTRE:
6    Q.   Is it correct that the neurological exam was normal?
7           MR. PETRU:  Objection.  Assumes facts.
8           THE COURT:  You can lay a foundation.
9    BY MR. BONVENTRE:
10   Q.   Neurological examinations were done each and every
11   time the patient came into the clinic, correct?
12   A.   No.
13   Q.   Okay.  Did doctors indicate each and every time the
14   patient came to the clinic that they had, in fact, done a
15   neurological exam, and they gave a response as to what it
16   was?
17          MR. PETRU:  Objection.  Assumes facts.
18          THE COURT:  She indicated she reviewed the
19   medical records.  The objection is overruled.
20          THE WITNESS:  I don't remember the records, so I
21   can't state for sure.  But as far as I recall, the
22   neurologic exam was not abnormal as stated in those
23   records.
24   BY MR. BONVENTRE:
25   Q.   And each time those other doctors saw the patient

Barry L. Fanning, RMR, CRR - Official Court Reporter
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

EXHIBIT D
Page 8 of 14

1  they wrote "alert and oriented," "mood normal," and things
2  like that.  Do you recall that, sir -- Doctor?
3          MR. PETRU:  Objection.  Assumes facts.
4          MR. BONVENTRE:  I am asking if she reviewed the
5  records.
6          THE COURT:  Overruled.
7          THE WITNESS:  I don't remember that one way or
8  the other, honestly.
9  BY MR. BONVENTRE:
10 Q.  It would be fair to say that multiple x-rays were
11 taken of the pelvis and the clavicle and the shoulder, and
12 all of those x-rays -- each and every one of them -- were
13 negative with the exception of the clavicle, correct?
14 A.  That's correct.
15 Q.  And it also would be fair to say that the clavicle
16 had what doctors call a minimally displaced fracture,
17 correct?
18 A.  That's correct.
19 Q.  And a minimally displaced fracture, Doctor, means
20 that the bones are very close, they are not far apart; is
21 that fair to say?
22 A.  Yeah, that's fair to say.
23 Q.  And that is a good prognosis for healing when the
24 bones are very close and nondisplaced; is that fair to
25 say?

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

**EXHIBIT D**
**Page 9 of 14**

```
 1    A.   That's fair to say.
 2    Q.   And in fact, the only treatment that Emily had for
 3    the clavicle was she wore a sling for a couple of weeks,
 4    correct?
 5    A.   That's correct.
 6    Q.   And then the clavicle healed, correct?
 7    A.   That's correct.
 8    Q.   And she had x-ray of her left shoulder, and that was
 9    completely normal, correct?
10    A.   That's correct.
11    Q.   The reality was, after a short period of time, you
12    were not treating her for any physical injuries; isn't
13    that correct?
14    A.   That's correct.
15    Q.   The first time you saw Emily post accident, after the
16    derailment, Doctor, was it the 31st, or was it the 22nd?
17    A.   It was the 22nd.
18    Q.   Was there a full record made of the 22nd, or was it
19    an abbreviated record in reference to you, Doctor?
20    A.   I'm sorry.  I don't understand.
21    Q.   Yeah, because it is a lousy question, that's why you
22    don't understand.
23         On the 31st, you have notes of your treatment, on
24    December 31st of 2017, correct, Doctor?
25    A.   No.  That's -- it's actually from the 22nd.  That's
```

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
*1717 Pacific Ave - Tacoma, WA 98402*

**EXHIBIT D**
**Page 10 of 14**

```
 1   Q.   Do you know if she took it after you prescribed it?
 2   A.   She said she did.
 3   Q.   Did she have a tendency not to -- you would make
 4   suggestions and she wouldn't always follow them; is that
 5   fair to say?
 6   A.   Not -- no, not any different than any other patient.
 7   Q.   A lot of your patients don't follow --
 8   A.   Yep.
 9   Q.   Okay.  You saw the patient again, and for the last
10   time, on May 17, 2021, correct?
11   A.   Correct.
12   Q.   So on the last time, just so the jury understands,
13   the last time you saw Ms. Torjusen was seven or eight
14   months ago, correct?
15   A.   That's correct.
16   Q.   And she told you at the time that she was planning to
17   move to Cairo, correct?
18   A.   I don't think move.  She was planning to go back to
19   Cairo.
20   Q.   Okay.  Do you know where she lives right now, Doctor?
21   A.   I do not.
22   Q.   So you don't know that she is actually living in
23   Cairo?
24   A.   I don't.
25   Q.   Do you know what she is doing -- do you know what she
```

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

**EXHIBIT D**
**Page 11 of 14**

1  is doing in terms of her employment?
2  A.  I do not.
3  Q.  Do you know how she did in school at the UW?
4  A.  I don't have her grades, no.
5  Q.  Do you have any sense, she did great, she did lousy?
6  A.  The only thing I have is that she was frustrated.
7  She mentioned like, for example, took Arabic in France and
8  had a hard time of it.
9  Q.  That semester she took Arabic in France, her GPA, do
10 you know if it was 3.7, 3.9?
11 A.  I have no idea.
12 Q.  In any event, the last time you saw her was about
13 eight months ago, correct?
14 A.  That's correct.
15 Q.  And she told you that the headaches have gotten
16 better?
17 A.  That's correct.
18 Q.  And that she plans to go to Egypt, correct?
19 A.  Correct.
20 Q.  And you did a physical examination, correct?
21 A.  Correct.
22 Q.  And your physical examination was, once again,
23 completely normal, correct?
24 A.  That's correct.
25 Q.  And you noted that she was alert and oriented and had

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
1717 Pacific Ave - Tacoma, WA 98402

**EXHIBIT D**
**Page 12 of 14**

1  a normal affect, correct?
2  A.   Correct.
3           MR. BONVENTRE:  I think that may be it, Doctor.
4  That's all I have, Doctor.  Thank you very much for your
5  time.  I appreciate it.
6      I would like to move into evidence Plaintiff's
7  Exhibit 7, which is the letter that Dr. Spohr wrote that
8  has been referenced.  I don't want to publish it now, but
9  I would like to move it into evidence.
10          THE COURT:  Any objection to 7?
11          MR. BONVENTRE:  No objection.
12          THE COURT:  It is admitted.  It may be published.
13       (Exhibit No. 7 admitted.)
14          MR. BONVENTRE:  We will publish it later.
15                     REDIRECT EXAMINATION
16 BY MR. PETRU:
17 Q.   It is always interesting when an attorney meets with
18 a physician -- a treating physician to get some
19 information to find out what's going on and it becomes a
20 big deal.
21          MR. BONVENTRE:  I object, your Honor.
22          MR. PETRU:  It was a big deal, counsel.  You just
23 mentioned it.
24          MR. BONVENTRE:  I assume we are supposed to have
25 questions, your Honor.

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
*1717 Pacific Ave - Tacoma, WA 98402*

**EXHIBIT D**
**Page 13 of 14**

```
 1
 2                    C E R T I F I C A T E
 3
 4
 5    I certify that the foregoing is a correct transcript from
 6    the record of proceedings in the above-entitled matter.
 7
 8
 9
10    /s/ Barry Fanning
11    BARRY FANNING
      COURT REPORTER
12
```

*Barry L. Fanning, RMR, CRR - Official Court Reporter*
(253) 882-3833 Barry_Fanning@WAWD.uscourts.gov
*1717 Pacific Ave - Tacoma, WA 98402*

**EXHIBIT D
Page 14 of 14**